215 P.3d 232 (2009)
STATE of Washington, Respondent,
v.
Samuel W. DONAGHE, Appellant.
No. 37008-5-II.
Court of Appeals of Washington, Division 2.
September 3, 2009.
*234 Dana M. Lind, Nielsen Broman & Koch PLLC, Seattle, WA, for Appellant.
Carol L. La Verne, Thurston County Prosecutor's Office, Olympia, WA, for Respondent.
HUNT, J.
¶ 1 Samuel Donaghe appeals the trial court's denial of his motion to issue a RCW 9.94A.637(1) certificate of discharge for his rape convictions and sentences.[1] Donaghe argues that the trial court acted outside its authority when it (1) determined that the community placement period of his sentence tolled during his confinement as a sexually violent predator (SVP) at the Special Commitment Center (SCC); and (2) refused to issue a certificate of discharge, despite a letter from the Washington Department of Corrections to Donaghe (DOC letter), which he claims demonstrates that he has completed all requirements of his sentence, thus making him eligible for RCW 9.94A.637(1) discharge. We hold that (1) by virtue of Donaghe's subsequent and ongoing SCC confinement, his community placement period has not yet begun; (2) therefore, he has not completed the community placement portion of his rape sentences; and (3) the trial court did not err in refusing to issue a certificate of discharge under RCW 9.94A.637(1). We affirm.

FACTS

I. RAPE SENTENCES, WITH COMMUNITY CUSTODY COMPONENT
¶ 2 On March 9, 1990, the State charged Donaghe with six counts of second degree rape of AT, a foreign exchange student living with Donaghe. On June 15, Donaghe entered an Alford[2] plea to one count of second degree rape and one count of third degree rape.[3]
¶ 3 On October 30, 1991, the trial court sentenced Donaghe to concurrent sentences of 42 months confinement for the second degree rape and 17 months for the third degree rape. The trial court also sentenced Donaghe to one year of community placement for these two rape convictions.[4] The trial court credited Donaghe with 19 months and 16 days for time served.[5] The trial court also ordered these rape conviction sentences to run concurrently with Donaghe's 13-month sentence for an apparently separate solicitation to commit assault conviction.[6] On June 8, 1994, after completing a sentence for an unrelated 1988 federal conviction,[7] Donaghe was transferred to Washington State custody to serve his sentences for the rape and solicitation convictions.

*235 II. INVOLUNTARY COMMITMENT PETITION
¶ 4 While Donaghe was in confinement for his rape convictions, however, the State filed a petition to have him classified as an SVP under RCW 71.09.010. Before he was released, the State transferred him to the SCC for involuntary commitment proceedings, where he apparently remains today.

III. REQUEST FOR CERTIFICATE OF DISCHARGE
¶ 5 On March 31, 2000, while still awaiting his civil SVP commitment trial, Donaghe moved the Thurston County Superior Court for certificates of discharge for his rape and solicitation convictions. In his reply to the State's response to his motion, Donaghe argued that the tolling statute in effect at the time of his 1991 sentencing required the court to determine tolling.[8] The State agreed that the 1991 statute applied because it was in effect when Donaghe committed the 1989 rapes.
¶ 6 The State also agreed that the trial court should issue a certificate of discharge for Donaghe's solicitation conviction. But the State argued against discharge of the judgment and sentence for his rape offenses on grounds that Donaghe had not fulfilled the community custody portion of his sentence, which had tolled while Donaghe resided at the SCC.
¶ 7 On May 19, the trial court denied Donaghe's motion with respect to the rape offenses. The clerk's minutes for this hearing indicate:
Court reviewed the Judgment and Sentence. Court ruled that Mr. Donaghe has not served his community placement, so he is not entitled to a discharge. If there is to be a tolling of time, the Court is to make that decision. Court signed the "Certificate and Order of Discharge Pursuant to RCW 9.94A.220" in XX-X-XXXXX-X cause.
Clerk's Papers (CP) at 77.
¶ 8 On November 2, 2007, the trial court heard Donaghe's renewed motion for a certificate of discharge for the two rape judgments and sentences. Adhering to its May 19, 2000 ruling, the trial court stated: "The defendant's custodial detention tolls the running of the community placement requirement, and, thus, all aspects of the sentence have not yet been completed." Report of Proceedings (RP) (Nov. 2, 2007) at 6-7.
¶ 9 After the trial court issued its ruling, Donaghe asserted that he had received a DOC letter stating that his "community corrections situation" had been terminated. The trial court (1) stated that its present and previous rulings "may need to be reconsidered" if such a letter existed; (2) stated that it would authorize a further hearing if Donaghe produced such a letter; and (3) instructed Donaghe to provide the letter to the trial court.
¶ 10 On November 7, Donaghe filed a motion for reconsideration, to which he attached the DOC letter. The DOC letter, dated January 23, 2006, and written by DOC Correctional Records Specialist Virginia Shamberg, stated:
Dear Mr. Donaghe:
This letter is in response to your request for conviction information and the dates of incarcerations of the above named.
Mr. Donaghe was convicted out of Thurston County (cause #XXXXXXXXX) on 10/30/91 for Rape 2nd and sentenced to a maximum term of 3 years & 6 months. He was convicted out of Thurston County (cause # XXXXXXXXX) on 10/30/91 for Rape 3 and sentenced to a maximum term of 1 year & 5 months. Mr. Donaghe was received at Washington Corrections Center on 6/8/94 and released on 4/25/96.[9]

*236 Mr. Donaghe was also convicted out of Thurston County (cause #XXXXXXXXX) on 10/30/91 for Assault 2nd and sentenced to a maximum term of 1 year & 1 month. He was on supervision with the Department of Corrections from 4/25/96 until 11/24/04 when these cases were terminated.
CP at 41.
¶ 11 On November 19, the trial court reheard Donaghe's motion for discharge. Citing RCW 9.94A.637(1),[10] Donaghe argued that the DOC letter constituted notification that he had completed the terms of his sentence and, thus, the statute required the court to issue a certificate of discharge.
¶ 12 While recognizing that the DOC letter might constitute evidence that the DOC considered Donaghe's sentence complete, the trial court declined to issue the certificate of discharge on the grounds that (1) Donaghe had not fulfilled the community custody portion of his sentence as defined by the relevant statutes; (2) Donaghe's SVP civil commitment at SCC tolled the onset of the community custody portion of Donaghe's rape sentences; and (3) the court had previously decided essentially the same motion.
¶ 13 Donaghe appeals.

ANALYSIS
¶ 14 Donaghe argues that the trial court erred by refusing to issue him a certificate of discharge for his two rape convictions because (1) his community placement sentence began when he was transferred to the SCC; (2) the trial court did not have authority to toll his community placement because the applicable version of RCW 9.94A.625(4) vests that authority in the DOC not the court; and (3) the DOC letter, stating that Donaghe's "cases were terminated," supports DOC's position that he has completed the community placement portion of his sentence.[11] We disagree.

I. DONAGHE'S COMMUNITY PLACEMENT HAS NOT YET STARTED
¶ 15 The trial court determined that Donaghe was not entitled to a certificate of discharge because his term of community placement tolled while he was at the SCC as a SVP; accordingly, the parties' briefs focus on the tolling issue. We agree with the trial court that Donaghe is not entitled to a certificate of discharge because he has not completed his community placement term. But we rely on alternative grounds to support this conclusion. We hold that Donaghe's community placement term for his rape sentences did not commence because he was never "in the community"; and because he has not yet begun any community placement, he cannot have completed that term.[12]

A. Standard of Review
¶ 16 A statutory provision is not ambiguous unless it is subject to more than one reasonable interpretation. State v. Jacobs, 154 Wash.2d 596, 600-01, 115 P.3d 281 (2005). We review questions of statutory interpretation de novo. Id. at 600, 115 P.3d 281. When interpreting a statute, we seek to ascertain the legislature's intent. Id. "[I]f *237 the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." Id. (quoting Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wash.2d 1, 9-10, 43 P.3d 4 (2002)) (alteration in original). We discern the "plain meaning" of a statutory provision from the ordinary meaning of its language, as well as the general context of the statute, related provisions, and the statutory scheme as a whole. Jacobs, 154 Wash.2d at 600, 115 P.3d 281.
¶ 7 We view the provisions of an act in relation to each other and, if possible, harmonize the provisions to effect the act's overall purpose. State v. Bays, 90 Wash. App. 731, 735, 954 P.2d 301 (1998). We interpret statutes to give effect to all language in the statute and to render no portion meaningless or superfluous. State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003) (quoting Davis v. Dep't of Licensing, 137 Wash.2d 957, 963, 977 P.2d 554 (1999)). We will avoid a reading that produces absurd results because we "`will not ... presume[] that the legislature intended absurd results.'" J.P., 149 Wash.2d at 450, 69 P.3d 318 (quoting State v. Delgado, 148 Wash.2d 723, 733, 63 P.3d 792 (2003) (Madsen, J., dissenting)).

B. Community Placement
¶ 18 Former RCW 9.94A.030(4) (1989)[13] defined "community placement" as the
one-year period during which the offender is subject to the conditions of community custody and/or postrelease supervision, which begins either upon completion of the term of confinement (postrelease supervision) or at such time as the offender is transferred to community custody in lieu of earned early release. Community placement may consist of entirely community, custody, entirely postrelease supervision, or a combination of the two.
(Emphasis added.) Former RCW 9.94A.030(4) provides that community placement begins "either upon completion of the term of confinement (postrelease supervision) or at such time as the offender is transferred to community custody in lieu of earned release." (Emphasis added). "Community custody" is the "portion of an offender's sentence of confinement in lieu of earned release time ... served in the community subject to controls placed on the offender's movement and activities by the department." RCW 9.94A.030(5) (emphasis added).[14]
¶ 9 Reading RCW 9.94A.030(5) and former 9.94A.030(4) together persuades us that community placement must be served "in the community." The legislature has provided that community placement begins either (1) when the offender is transferred to "community custody," which RCW 9.94A.030(5) explicitly states must be served "in the community"; or (2) "upon completion of the term of confinement," which the parenthetical "postrelease supervision" modifies.[15] Former RCW 9.94A.030(4) (emphasis added). The prefix "post-" means "after," "subsequent," or "later." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 1771 (2002). The "postrelease supervision" parenthetical makes it clear that "completion of the term of confinement" refers to actual release into the community, as opposed to the end of the offender's sentence. Thus, under the plain, unambiguous language of former RCW 9.94A.030(4), community placement *238 cannot begin until after the State releases an offender into the community.
¶ 20 Accordingly, Donaghe's community placement cannot begin until the State releases him from confinement to supervision in the community. This has not yet happened because, instead of releasing Donaghe from confinement at the end of the prison term portion of his rape sentences, the State transferred him to confinement at the SCC. We hold, therefore, that Donaghe has not begun, and thus not fulfilled, the one-year community placement portion of his sentences for two counts of rape.

C. In re Knippling

¶ 21 Donaghe argues that Division Three's decision in In re Pers. Restraint of Knippling, 144 Wash.App. 639, 183 P.3d 365 (2008), demonstrates that his community custody began to run when he was transferred to SCC. Knippling is not binding on us; nor do we find the majority's reasoning persuasive.[16] Instead, we find Judge Sweeney's reasoning compelling and adopt his dissent  that community custody must be served in the community.[17]Id. at 644, 183 P.3d 365 (Sweeney, J., dissenting).
¶ 22 In Knippling, Division Three of our court upheld Knippling's convictions but remanded for resentencing consistent with Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Knippling, 144 Wash.App. at 641, 183 P.3d 365.[18] On remand, the trial court sentenced Knippling to concurrent standard-range sentences, the longest of which was 17 months confinement. Id. Since he had already served 41 months of his original exceptional sentence, Knippling was released immediately into community custody. Id.
¶ 23 Knippling appealed again, this time arguing that he should have received credit against his 18 to 36 months of community custody for the extra 24 months he was incarcerated beyond his standard range sentence. Id. at 641-42, 183 P.3d 365. The Division Three majority agreed. It relied on RCW 9.94A.715(1),[19] which provides in part that "community custody [shall] begin: (a) [u]pon completion of the term of confinement; [or] (b) at such time as the offender is transferred to community custody in lieu of earned release." Id. at 642, 183 P.3d 365. (Emphasis added.) Focusing on the legislature's use of completion of confinement rather than release, the majority reasoned that "[t]he ordinary meaning of `completion' is different from the ordinary meaning of `release' because an offender can complete a term of confinement without being released."[20]Id. at 642, n. 3, 183 P.3d 365. The majority then concluded that, because Knippling had "completed his term of confinement" 24 months before his release from prison, his community custody began to run 24 months before he was released. Id. at 642, 183 P.3d 365.
¶ 24 Judge Sweeney dissented, concluding that Knippling's "term of community custody began only when the State released him from confinement into the community." Id. at 643-44, 183 P.3d 365 (Sweeney, J., dissenting). *239 In reaching this conclusion, Judge Sweeney cited RCW 9.94A.030(5)'s definition of "community custody":
"Community custody" means that portion of an offender's sentence ... served in the community subject to controls placed on the offender's movement and activities by the department.
Knippling, 144 Wash.App. at 643, 183 P.3d 365. (Emphasis added). In ignoring this language, the Knippling majority departs from a well-settled rule of statutory construction  to give effect to all language and to render no portion meaningless.[21]See also our recent decision in Jones, 210 P.3d at 1071 ("Knippling court's conclusion that an offender's community custody term may begin before the offender is released into the community conflicts with the statute's definition of `community custody.'")
¶ 25 We agree with Judge Sweeney that (1) "[t]he term community custody... clearly contemplates time spent in the community"; and (2) the legislature intended "continued control for a period of time after a defendant is released." Knippling, 144 Wash.App. at 643, 183 P.3d 365 (Sweeney, J., dissenting). Further, in our view, this reasoning applies equally to community placement: The statutory scheme clearly contemplates that a term of "community placement" will be served in the community, under continued DOC control, in order to ensure the offender's smooth and safe transition back into the community.[22]

II. CERTIFICATE OF DISCHARGE REQUIREMENTS
¶ 26 Donaghe argues that the DOC letter constitutes notice from the DOC that he has completed all requirements of his sentence.[23] Again, we disagree.
¶ 27 An offender is not entitled to a certificate of discharge until he has completed the requirements of his sentence and DOC has notified the sentencing court of the offender's completion of his sentence. RCW 9.94A.637(1)(a).[24] Donaghe fails to meet the requirements for issuance of a certificate of discharge because he has not completed the requirements of his sentence. Further, the DOC letter stated that he had been on supervision with DOC until DOC "terminated" his cases, not that Donaghe had completed the requirements of his rape sentences. Disagreeing with Donaghe, we do not read this vague DOC letter language to mean that Donaghe has fulfilled his community placement requirement so as to trigger discharge, RCW 9.94A.637(1), especially because Donaghe has not yet been released into the community or served any portion of his community placement sentence. We therefore hold that the trial court did not err by refusing to issue a certificate of discharge.

III. REFUSAL TO ISSUE DISCHARGE CERTIFICATE DOES NOT RENDER CIVIL SVP COMMITMENT UNCONSTITUTIONAL
¶ 28 Finally, Donaghe argues that if he is unable to complete his community placement and to obtain a discharge while confined at the SCC, then the sexually violent *240 predator civil commitment procedure punitively and unconstitutionally disenfranchises him and other SCC residents, possibly for the rest of their lives.
¶ 29 The State counters that the Article VI, section 3 of the Washington Constitution specifically disenfranchises convicted felons.[25] The State argues that Donaghe's disenfranchisement arises from his failure to complete his felony sentence, not from his SVP commitment at the SCC. We agree with the State.
¶ 30 Donaghe's disenfranchisement arises from his commission of a felony, not from his civil commitment as a SVP.[26] As a convicted felon, Donaghe possesses no fundamental right to vote until he fulfills the requirements for discharge, thus restoring his civil rights. See RCW 9.94A.637(5); Madison v. State, 161 Wash.2d 85, 100-01, 163 P.3d 757 (2007). As our Supreme Court has noted, "[A] state may permanently disenfranchise a felon without violating his or her constitutional rights." Id. at 106, 163 P.3d 757. Because Donaghe has not completed the community placement portion of his sentence, he is not eligible for a discharge under RCW 9.94A.637(1).[27] Therefore, the trial court's refusal to issue a certificate of discharge does not unconstitutionally disenfranchise him.
¶ 31 We affirm.
I concur: BRIDGEWATER, P.J.
ARMSTRONG, J., (Dissenting).
¶ 32 Donaghe's continuing disenfranchisement while confined as a sexually violent predator at the Special Commitment Center (SCC) is patently unfair and unlawful. I respectfully dissent.
¶ 33 The majority reasons that Donaghe's disenfranchisement arises from his failure to complete his felony sentence and not from his commitment at the SCC. I disagree. Although the reason for Donaghe's initial disenfranchisement was his felony conviction, the sole reason for his continuing disenfranchisement is his SCC commitment. Donaghe would have regained his voting rights long ago had it not been for his confinement as a sexually violent predator.
¶ 34 Donaghe's civil commitment therefore perpetuates a sentence condition that does not serve its purposes. SCC commitments are civil in nature. In re Det. of Petersen, 138 Wash.2d 70, 78, 980 P.2d 1204 (1999). "[T]he goals of civil and criminal confinement are quite different; the former is concerned with incapacitation and treatment, while the latter is directed to retribution and deterrence." In re Pers. Restraint of Young, 122 Wash.2d 1, 21, 857 P.2d 989 (1993). Disenfranchisement has a punitive purpose. See State v. Schmidt, 143 Wash.2d 658, 683, 23 P.3d 462 (2001) (loss of liberty, property, the right to vote, and the right to possess a firearm collectively encompass the punishment the State imposes on a convicted felon) (Johnson, J., dissenting). The civil commitment goals of incapacitation and treatment are intended to be distinct from punishment; disenfranchisement does nothing but continue to punish a sexually violent predator. See Young, 122 Wash.2d at 21-22, 857 P.2d 989 (civil commitment goals are distinct from *241 punishment and have been so regarded historically).
¶ 35 Furthermore, SCC commitments are of indefinite duration, persisting until the person no longer meets the definition of a sexually violent predator or until conditional release to a less restrictive alternative is appropriate. RCW 71.09.060(1). Unconditional discharge is a rarity among SCC residents. Jonathan Martin, Violent Predator's Freedom Would be a First, THE SEATTLE TIMES, Jan. 9, 2008. More likely is conditional release to a less restrictive alternative, which requires a preliminary court finding that the person is willing to comply with supervision requirements imposed by the Department of Corrections (DOC). RCW 71.09.092.
¶ 36 Donaghe's continuing disenfranchisement is inconsistent with the goals of his current commitment. Furthermore, that disenfranchisement is of indefinite duration, as there is no way of knowing when or if Donaghe will be released from the SCC. If he is released to a less restrictive alternative, Donaghe will be subject to DOC supervision under conditions far more stringent than any imposed as part of his one-year term of community placement. See Martin, Violent Predator's Freedom (upon release to a less restrictive alternative, former SCC resident had to comply with 48 conditions); RCW 71.09.092. And, because such release would be of indefinite duration as well, Donaghe may never be in a position to fulfill his one year of community placement obligation and regain the right to vote.
¶ 37 The legislature has addressed this untenable situation in its recent amendments to RCW 29A.08.520. LAWS OF 2009, ch. 325, § 1. These amendments provisionally restore the right to vote to persons who have not fully satisfied their felony sentences as long as they are not under DOC authority. RCW 29A.08.520(1). Under the revised statute, a person is under DOC authority if he is serving a sentence of confinement in DOC custody or is subject to community custody as defined in RCW 9.94A.030. RCW 29A.08.520(7).
¶ 38 Donaghe is not currently under DOC authority or subject to community custody. See RCW 71.09.060(1) (SCC residents are in the custody of the Department of Social and Health Services). Consequently, Donaghe should be entitled to vote at least as of the effective date of the 2009 amendments to RCW 29A.08.520.
NOTES
[1] A certificate of discharge generally restores to an offender all civil rights lost by operation of law upon conviction and not provisionally restored. RCW 9.94A.637(5).
[2] North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).
[3] The record before us on appeal does not show whether the State dismissed the other originally charged counts.
[4] Both Donaghe and the State consistently refer to this portion of Donaghe's sentence as "community custody" in their briefing. But the sentencing document refers to the period as "community placement," for which RCW 9.94A.030 provides a different definition.
[5] The record does not reflect where Donaghe served this time. Federal authorities arrested Donaghe in February 1990, for violating probation for a 1988 conviction (making a false statement in a passport application). When Donaghe pleaded guilty to the instant rape charges, the federal court had not yet revoked his probation. Given that federal authorities took Donaghe into custody before the State charged Donaghe with these rapes, Donaghe may have remained in federal custody during the Thurston County proceedings.
[6] No further information about this solicitation offense appears in the record before us on appeal.
[7] See n. 5.
[8] The statute formerly provided:

For confinement sentences, the date for the tolling of the sentence shall be established by the entity responsible for the confinement. For sentences involving supervision, the date for the tolling of the sentence shall be established by the court, based on reports from the entity responsible for the supervision.
Former RCW 9.94A.170(4) (1991) (emphasis added).
[9] The record sheds no light on the discrepancy between the release date stated in this letter and the May 10, 1995 release date the State referenced in its memorandum opposing Donaghe's discharge.
[10] Donaghe quoted language from RCW 9.94A.637(1)(a), which provides:

When an offender has completed all requirements of the sentence, including any and all legal financial obligations, and while under the custody and supervision of the department, the secretary or the secretary's designee shall notify the sentencing court, which shall discharge the offender and provide the offender with a certificate of discharge by issuing the certificate to the offender in person or by mailing the certificate to the offender's last known address.
[11] Donaghe also, argues that, under the SVP civil commitment scheme, the State has authority to release him to a supervised period in the community under RCW 71.09.092 (conditional release to a less restrictive alternative). The implication is that this could substitute for community placement, because the purposes are arguably similar. But such an argument raises ripeness issues: Nothing in the record indicates that Donaghe has been released from his SVP commitment to a less restrictive alternative; thus even if Donaghe could fulfill the community placement portion of sentence under such a conditional release, he would not be entitled to a certificate of discharge because the State has not yet released him into the community under RCW 71.09.092.
[12] State v. Carroll, 81 Wash.2d 95, 101, 500 P.2d 115 (1972) (appellate court may sustain a trial court on any correct ground, even though that ground was not stated by the trial court).
[13] The legislature recodified this definition as RCW 9.94A.030(7) without materially changing the language. Two session laws recently amended RCW 9.94A.030's definitions. Laws 2009, ch. 28, § 4; Laws 2009, ch. 375, §§ 3 and 4. Because we apply the sentencing statutes in effect at the time Donaghe committed his crimes, State v. Varga, 151 Wash.2d 179, 191, 86 P.3d 139 (2004), none of the amendments affect our analysis so we do not address them.
[14] When Donaghe committed his offenses in 1989, this language was codified as former RCW 9.94A.030(3) (1989). Because the material language remains the same, we refer to the current version of the statute, codified as RCW 9.94A.030(5).
[15] Currently, RCW 9.94A.030(38) defines "postrelease supervision" as "that portion of an offender's community placement that is not community custody." That provision was not in effect at the time Donaghe committed these rapes.
[16] We also recently declined to follow the Knippling majority in State v. Jones, 151 Wash.App. 186, 210 P.3d 1068, 1072 (2009).
[17] We note that the trial court here sentenced Donaghe to "community placement," not "community custody." Nevertheless, we find Judge Sweeney's Knippling dissent persuasive.
[18] In re Knippling contains no further facts about how or why Knippling was resentenced consistent with Blakely.
[19] The legislature enacted the language in this provision in 2000. Thus, this statute would not govern Donaghe's case even if we found the Knippling majority analysis compelling. Laws 2000 c. 28, § 25. But, the pertinent language in RCW 9.94A.715(1) is almost identical to RCW former 9.94A.030(4)'s definition of "community placement."
[20] We agree with the Knippling majority that "an offender can complete a term of confinement without being released." Knippling, 144 Wash. App. at 642, n. 3, 183 P.3d 365. For example, an offender may complete the confinement portion of his sentence for one crime, but he may remain in confinement by virtue of holds placed on him for other crimes or other matters, such as SVP commitment proceedings. In our view, however, it does not follow that an offender's completion of the confinement term of his sentence necessarily coincides with beginning a term of community custody or placement, for which actual release into the community is necessary.
[21] J.P., 149 Wash.2d at 450, 69 P.3d 318 (quoting Davis, 137 Wash.2d at 963, 977 P.2d 554).
[22] Because we hold that Donaghe's community placement term have not yet begun, we do not reach his argument that the trial court lacked authority to determine tolling.
[23] Donaghe also argues, without citation, that the DOC letter meets the requirements for discharge under RCW 9.94A.637(1)(c) and that RCW 9.94A.637(1)(c) is remedial. Reply Br. of Appellant at 13-14. RAP 10.3(a)(6) requires citation to legal authorities. We do not review issues inadequately briefed or mentioned in passing. State v. Thomas, 150 Wash.2d 821, 868-69, 83 P.3d 970 (2004) (citing State v. Johnson, 119 Wash.2d 167, 171, 829 P.2d 1082 (1992)).
[24] The legislature has recodified the discharge statute since Donaghe committed his crimes in 1989. The pertinent portion of the applicable 1989 discharge statute, former RCW 9.94A.220, provided:

When an offender has completed the requirements of the sentence, the secretary of the department or his designee shall notify the sentencing court, which shall discharge the offender and provide the offender with a certificate of discharge.
(Emphasis added.) The material language remains the same, however, so we refer to the current version, RCW 9.94A.637(1)(a).
[25] "All persons convicted of infamous crime unless restored to their civil rights and all persons while they are judicially declared mentally incompetent are excluded from the elective franchise." CONST. art. VI, § 3.
[26] We note that our SVP civil commitment procedure and similar ones have withstood various constitutional challenges. See, e.g., Kansas v. Hendricks, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997); In re Det. of Stout, 159 Wash.2d 357, 150 P.3d 86 (2007); In re Det. of Petersen, 138 Wash.2d 70, 980 P.2d 1204 (1999).
[27] Furthermore, it is for the legislature, not the courts, to change the discharge requirements under RCW 9.94A.637(1) if it wishes to allow SVP's to receive some sort of community placement credit while confined at the SCC, even though they have not yet been released into the community. Although we take judicial notice that our legislature has recently made it easier for felons to restore their voting rights provisionally, a convicted offender is not eligible for provisional restoration of his voting rights if he is under DOC authority, including where he is still subject to community custody. Laws, of 2009, ch. 325 §§ 1 and 5.

In spite of the governor's having signed this bill and its having become effective July 27, 2009, during the pendency of this appeal, Donaghe, if eligible, should petition to restore his voting rights under the new law, which is not before us in this appeal.