256 P.3d 1171 (2011)
171 Wn.2d 847
STATE of Washington, Respondent,
v.
Samuel W. DONAGHE, Petitioner.
No. 83738-4.
Supreme Court of Washington, En Banc.
Argued October 19, 2010.
Decided June 30, 2011.
*1172 Dana M. Lind, Nielsen Broman & Koch PLLC, Seattle, WA, for Petitioner.
Carol L. La Verne, Thurston County Prosecutor's Office, Olympia, WA, for Respondent.
FAIRHURST, J.
¶ 1 Samuel W. Donaghe was convicted of second degree rape. He seeks restoration of his voting rights and petitions this court for review of the Court of Appeals decision affirming the trial court's denial of his motion for a certificate of discharge. Donaghe argues that (1) the trial court lacked the authority to deny his motion for a certificate of discharge, (2) the community placement portion of his sentence should not have tolled during his precommitment confinement and civil confinement as a sexually violent predator (SVP) at the Special Commitment Center (SCC), and (3) the tolling of his community placement sentence results in his unconstitutional disenfranchisement. We affirm the Court of Appeals.

I. FACTS
¶ 2 The State charged Donaghe with six counts of second degree rape of AT, a foreign exchange student living with Donaghe. Donaghe entered an Alford[1] plea to one count of second degree rape and one count of third degree rape, with both offenses occurring in September 1989. Donaghe received concurrent sentences of 42 and 17 months of incarceration for the second and third degree rapes and one year of community placement.[2] *1173 The trial court credited Donaghe with 19 months and 16 days for time served.
¶ 3 On May 10, 1995, the day Donaghe's incarceration was to end, the State filed a petition to confine Donaghe as an SVP under RCW 71.09.010.[3] Donaghe was transferred to precommitment civil detention at the SCC to await involuntary commitment proceedings.
¶ 4 On March 31, 2000, while awaiting his SVP commitment trial, Donaghe moved for a certificate of discharge for his rape convictions.[4] The State argued against discharge because Donaghe had not fulfilled his community placement sentence, which the State argued tolled while he was confined at the SCC, pursuant to former RCW 9.94A.170(3) (1988) of the Sentencing Reform Act of 1981(SRA).[5] The trial court agreed with the State and denied Donaghe's motion for a certificate of discharge on May 19, 2000.
¶ 5 Three and a half years later, in September 2003, the court found that Donaghe was an SVP. The Court of Appeals affirmed in an unpublished opinion on August 3, 2005.
¶ 6 On November 2, 2007, the trial court heard Donaghe's renewed motion for a certificate of discharge but adhered to its May 19, 2000 ruling, stating that "the defendant's custodial detention tolls the running of the community placement requirement, and, thus, all aspects of the sentence have not yet been completed." Verbatim Report of Proceedings (VRP) (Nov. 2, 2007) at 6-7. At the conclusion of this hearing, Donaghe asserted that he had a letter from the Department of Corrections (DOC) (hereinafter DOC letter) "terminating my community corrections some time ago." Id. at 7. The trial court stated that if Donaghe could produce the DOC letter, its previous rulings "may need to be reconsidered." Id.
¶ 7 Donaghe filed a motion for reconsideration, attaching the DOC letter, dated January 23, 2006 and written by DOC Correctional Records Specialist Virginia Shamberg. The DOC letter stated:
Dear Mr. Donaghe:
This letter is in response to your request for conviction information and the dates of incarcerations of the above named[.]
Mr[.] Donaghe was convicted out of Thurston County (cause # XXXXXXXXX) on 10/30/91 for Rape 2nd and sentenced to a maximum term of 3 years & 6 months[.] He was convicted out of Thurston County (cause # XXXXXXXXX) on 10/30/91 for Rape 3 and sentenced to a maximum term of 1 year & 5 months[.] Mr[.] Donaghe was received at Washington Corrections Center on 6/8/94 and released on 4/25/96[.][[6]]
Mr[.] Donaghe was also convicted out of Thurston County (cause # XXXXXXXXX) on 10/30/91 for Assault 2nd and sentenced to a *1174 maximum term of 1 year & 1 month[.] He was on supervision with the Department of Corrections from 4/25/96 until 11/24/04 when these cases were terminated[.]
Clerk's Papers (CP) at 41. The trial court reheard Donaghe's motion for certificate of discharge. Donaghe argued the DOC letter constituted notification that he had completed the terms of his sentence and, thus, former RCW 9.94A.220 (1984)[7] required the court to issue a certificate of discharge. While recognizing that the DOC letter might constitute evidence that DOC considered the terms of Donaghe's sentence complete, the trial court denied the certificate of discharge, holding that Donaghe had not fulfilled the community placement portion of his sentence, which had been tolled by his SVP civil commitment at SCC. Donaghe appealed the trial court's decision.
¶ 8 In a split decision, the Court of Appeals affirmed and made three holdings. State v. Donaghe, 152 Wash.App. 97, 105-08 111-13, 215 P.3d 232 (2009). First, the Court of Appeals held the DOC letter was vague, did not constitute notice to the court, and, because Donaghe still had to complete community placement, he had not completed all requirements of his sentence. Id. at 111-12, 215 P.3d 232. Second, the Court of Appeals, relying on the plain language of former RCW 9.94A.030(3) and (4) (1989), held that because Donaghe was confined at SCC, his term of community placement could not "begin" until the State released Donaghe from confinement to the supervision of the community and, therefore, his sentence was incomplete and he was not entitled to a certificate of discharge. Donaghe, 152 Wash.App. at 108, 215 P.3d 232.[8] Third, the Court of Appeals held that the SVP civil commitment procedure did not punitively and unconstitutionally disenfranchise Donaghe and other SCC residents because "Donaghe's disenfranchisement arises from his commission of a felony, not from his civil commitment as an SVP. As a convicted felon, Donaghe possesses no fundamental right to vote until he fulfills the requirements for discharge, thus restoring his civil rights." Id. at 112, 215 P.3d 232 (footnote omitted). Finally, the Court of Appeals, in a footnote, referenced the passage of RCW 29A.08.520 in 2009. Donaghe, 152 Wash.App. at 113 n. 27, 215 P.3d 232. RCW 29A.08.520 provisionally restores the right to vote to persons who have not fully satisfied their felony sentences as long as they are not under DOC authority. Although taking judicial notice of the provision, the court stated that "Donaghe, if eligible, should petition to restore his voting rights under the new law," but that the issue was not before the Court of Appeals. Donaghe, 152 Wash.App. at 113 n. 27, 215 P.3d 232.[9]
¶ 9 Donaghe appealed, and this court granted review. State v. Donaghe, 168 Wash.2d 1010, 227 P.3d 853 (2010).

II. ISSUES
A. Given the DOC letter, did the trial court have the authority to deny Donaghe's motion for a certificate of discharge?
B. Under the SRA, did Donaghe's term of community placement toll during his confinement at the SCC as an SVP?
C. Does the tolling of Donaghe's community placement sentence result in his unconstitutional disenfranchisement?

*1175 III. ANALYSIS
¶ 10 The Court of Appeals correctly affirmed the denial of the motion for certificate of discharge. The trial court had the authority to deny the certificate of discharge, the denial was required under the tolling provision of former RCW 9.94A.170(3), and the denial did not result in Donaghe's unconstitutional disenfranchisement.
¶ 11 This case requires interpretation of multiple provisions of the SRA. Interpretation of the SRA is a question of law that we review de novo. State v. Keller, 143 Wash.2d 267, 276, 19 P.3d 1030 (2001). When interpreting a statute, "the court's objective is to determine the legislature's intent." State v. Jacobs, 154 Wash.2d 596, 600, 115 P.3d 281 (2005). If the meaning of a statute is plain on its face, we "`give effect to that plain meaning.'" Id. (quoting Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wash.2d 1, 9, 43 P.3d 4 (2002)). To determine the plain meaning, we look to the text of the statute, as well as "the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." Id. An undefined term is "given its plain and ordinary meaning unless a contrary legislative intent is indicated." Ravenscroft v. Wash. Water Power Co., 136 Wash.2d 911, 920-21, 969 P.2d 75 (1998). If after this inquiry the statute is susceptible to more than one reasonable interpretation, it is ambiguous and we "may resort to statutory construction, legislative history, and relevant case law for assistance in discerning legislative intent." Christensen v. Ellsworth, 162 Wash.2d 365, 373, 173 P.3d 228 (2007).

A. Authority of the trial court

¶ 12 Donaghe argues that the DOC letter demonstrates that DOC considered the terms of Donaghe's sentence to have been completed; therefore, under former RCW 9.94A.220, the court had no discretion but to issue the certificate of discharge. Former RCW 9.94A.220 provides in pertinent part:
When an offender has completed the requirements of the sentence, the secretary of the department or his designee shall notify the sentencing court, which shall discharge the offender and provide the offender with a certificate of discharge.
The discharge shall have the effect of restoring all civil rights lost by operation of law upon conviction, and the certificate of discharge shall so state.
¶ 13 The DOC letter does not satisfy former RCW 9.94A.220 for several reasons. First, the DOC letter was not official notice to the sentencing court that Donaghe had completed his term of confinement. The DOC letter was not sent to the sentencing court, but to Donaghe in response to his request for conviction information. Second, the DOC letter merely states that DOC's supervision was terminated, not that the requirements of Donaghe's sentence had been completed.[10], [11] Finally, even if the DOC letter *1176 was intended as notice that Donaghe had completed his sentence, the DOC letter did not require the court to issue the certificate of discharge if the court determined that Donaghe had not actually completed those requirements. Upon receiving notification from DOC, the court still must make a factual determination whether an offender has complied with the terms of the sentence. See State v. Johnson, 148 Wash.App. 33, 39, 197 P.3d 1221 (2008), review denied, 166 Wash.2d 1017, 210 P.3d 1019 (2009). We hold that the trial court had the authority to deny the certificate of discharge.

B. Tolling a term of community placement

¶ 14 Donaghe argues that his sentence of community placement should have run concurrently with his confinement at the SCC. This issue requires us to determine both when a period of community placement begins and when that period of community placement tolls. The Court of Appeals held that community placement can only begin "in the community;" therefore Donaghe's community placement never began because he was confined at the SCC after incarceration. Donaghe, 152 Wash.App. at 107, 215 P.3d 232. The Court of Appeals noted that "[t]he prefix `post-' means `after,' `subsequent,' or `later,'" id. at 108, 215 P.3d 232 (quoting Webster's Third New International Dictionary 1771 (2002)), and concluded postrelease supervision refers to actual release into the community, as opposed to the date representing the conclusion of the offender's term of confinement. Id. The Court of Appeals did not reach the issue of whether confinement at the SCC tolled Donaghe's sentence of community custody. Id. at 110-11, 215 P.3d 232.
¶ 15 The plain language of the SRA contradicts the Court of Appeals' statutory interpretation. The SRA, in 1989, defined "`[c]ommunity placement'" as
a one-year period during which the offender is subject to the conditions of community custody and/or postrelease supervision, which begins either upon completion of the term of confinement (postrelease supervision) or at such time as the offender is transferred to community custody in lieu of early release. Community placement may consist of entirely community custody, entirely postrelease supervision, or a combination of the two.
Former RCW 9.94A.030(4). Accordingly, community custody and postrelease supervision are two potential forms of community placement. The legislature defined "`[c]ommunity custody'" as "that portion of an inmate's sentence of confinement in lieu of early release time served in the community subject to controls placed on the inmate's movement and activities by the department of corrections." Former RCW 9.94A.030(3). While "`[p]ostrelease supervision'" is defined as "that portion of an offender's community placement that is not community custody." Former RCW 9.94A.030(21). Former RCW 9.94A.030(4) expressly states that community custody begins when "the offender is transferred to community custody in lieu of early release." Donaghe's time at the SCC was not "in lieu of early release." Moreover, former RCW 9.94A.030(3) limits the meaning of "`[c]ommunity custody'" to that portion of an inmate's sentence that is "served in the community." Donaghe was not in the community. Therefore, Donaghe's position is that his community placement sentence was in the form of postrelease supervision, which is merely defined as "not community custody" and, under former RCW 9.94A.030(4), *1177 "begins . . . upon completion of the term of confinement." Donaghe argues that his postrelease supervision began at the conclusion of his incarceration and transfer to the SCC.
¶ 16 We agree with Donaghe and disagree with this portion of the Court of Appeals' analysis. Under the plain language of former RCW 9.94A.030(4) and (21), community placement in the form of postrelease supervision begins simply upon completion of the term of confinement. Release may be from incarceration to the SCC. Because Donaghe was transferred to the SCC at the completion of his term of incarceration, he was "released" and his term of postrelease supervision could statutorily begin. However, once it begins, it can also toll.
¶ 17 In 1989, the SRA provided for the tolling of sentences of confinement or supervision (including community placement sentences) as follows:
Any period of supervision shall be tolled during any period of time the offender is in confinement for any reason. However, if an offender is detained pursuant to [former] RCW 9.94A.207 [(1999)][[12]] or [former] 9.94A.195 [(1984)][[13]] and is later found not to have violated a condition or requirement of supervision, time spent in confinement due to such detention shall not toll the period of supervision.
Former RCW 9.94A.170(3) (emphasis added). This provision, subject to two exceptions not applicable here, provides for the tolling of a supervision sentence (including postrelease supervision) while an "offender is in confinement for any reason." Id. "`Confinement'" is defined as "total or partial confinement." Former RCW 9.94A.030(7). "`Total confinement'" is defined as "confinement inside the physical boundaries of a facility or institution operated or utilized under contract by the state or any other unit of government for twenty-four hours a day, or pursuant to [former] RCW 72.64.050 [1979] and 72.64.060." Former RCW 9.94A.030(27).[14]
¶ 18 When a prosecuting attorney or the attorney general files a petition alleging that a person is an SVP, and the judge makes a determination that probable cause exists, the "judge shall direct that the person be taken into custody." RCW 71.09.040(1). Within 72 hours, a probable cause hearing is held, at which time the person can contest the probable cause finding. RCW 71.09.040(2). Until the probable cause hearing is complete, the person "may be held in total confinement at the county jail until the trial court renders a decision." Id. (emphasis added). If the court determines that there is in fact probable cause that the person is an SVP, the legislature has explicitly provided that "[i]n no event shall the person be released from confinement prior to trial." RCW 71.09.040(4). During the SVP trial, the person is to be "detained in a secure facility." RCW 71.09.060(1). Even if a retrial is required, the person may not be "released from confinement prior to retrial or dismissal of the case." Id. Thus, Donaghe's precommitment confinement clearly falls within the definition of "total confinement" as he was held in custody in a state facility for 24 hours a day during the pendency of his SVP proceeding.
*1178 ¶ 19 After the court held that Donaghe was an SVP, he was civilly committed to the SCC. As provided in RCW 71.09.060(1), civil commitment involves potentially permanent confinement of the SVP:
If the court or jury determines that the person is a sexually violent predator, the person shall be committed to the custody of the department of social and health services for placement in a secure facility operated by the department of social and health services for control, care, and treatment until such time as: (a) The person's condition has so changed that the person no longer meets the definition of a sexually violent predator; or (b) conditional release to a less restrictive alternative as set forth in RCW 71.09.092 is in the best interest of the person and conditions can be imposed that would adequately protect the community.
Moreover, under the sexually violent predator act, chapter 71.09 RCW, a "`[t]otal confinement facility'" is defined as including the SCC where Donaghe is currently confined: "`Total confinement facility' means a secure facility that provides supervision and sex offender treatment services in a total confinement setting. Total confinement facilities include the special commitment center and any similar facility designated as a total confinement facility by the secretary." RCW 71.09.020(19) (emphasis added). Donaghe's confinement at the SCC falls within the plain and unambiguous statutory definition of "`[t]otal confinement'" under former RCW 9.94A.030(27). Thus, under former RCW 9.94A.030(7), Donaghe was in confinement while civilly committed as an SVP at the SCC.
¶ 20 The reason for Donaghe's confinement was his precommitment civil detention and subsequent civil commitment to the SCC as an SVP. This falls within "any reason." Former RCW 9.94A.170(3). While Donaghe's sentence of community placement began upon release from incarceration, it immediately tolled because of his confinement at the SCC. The trial court properly denied his motion for a certificate of discharge.

C. Disenfranchisement

¶ 21 Donaghe argues that if he is unable to obtain a certificate of discharge while confined at the SCC, then his civil commitment procedure punitively and unconstitutionally disenfranchises him and other SCC residents, possibly for the rest of their lives. The State responds that Donaghe's disenfranchisement arises from his felony conviction, not his civil commitment. The Court of Appeals agreed with the State, and so do we.
¶ 22 Article VI, section 3 of the Washington Constitution specifically disenfranchises convicted felons: "All persons convicted of infamous crime unless restored to their civil rights and all persons while they are judicially declared mentally incompetent are excluded from the elective franchise."
¶ 23 Convicted felons remain without their civil rights, including the right to vote, until issued a certificate of discharge upon completion of the requirements of their sentence. Former RCW 9.94A.220. In Madison v. Washington, 161 Wash.2d 85, 110, 163 P.3d 757 (2007), we upheld the disenfranchisement of felons who have satisfied the terms of their sentences, except for paying legal financial obligations. As this court noted, "[A] state may permanently disenfranchise a felon without violating his or her constitutional rights." Id. at 106, 163 P.3d 757. Similar to felons who remain (potentially permanently) unable to pay legal financial obligations, felons who fail to serve their terms of community placement because of civil commitments have not been unconstitutionally disenfranchised by the failure to complete their sentence. A felon's disenfranchisement arises from the commission of a felony, not from his civil commitment. Until Donaghe fulfills the requirements of his sentence, he is not eligible for discharge under former RCW 9.94A.220. The trial court's denial of his motion for a certificate of discharge did not result in his unconstitutional disenfranchisement.[15]

*1179 IV. CONCLUSION
¶ 24 We affirm the Court of Appeals. The trial court had the authority to deny Donaghe's motion for a certificate of discharge. Under the SRA, the denial of the certificate of discharge was proper because Donaghe's period of community placement was tolled by his confinement as an SVP at the SCC. The denial of Donaghe's certificate of discharge did not result in his unconstitutional disenfranchisement.
WE CONCUR: CHARLES W. JOHNSON, TOM CHAMBERS, SUSAN OWENS and JAMES M. JOHNSON, Justices.
STEPHENS, J. (dissenting).
¶ 25 I agree with the majority that Samuel Donaghe's term of community placement began upon completion of his term of confinement. I disagree, however, that Donaghe's detention under a civil commitment scheme triggered the tolling provision under the Sentencing Reform Act of 1981(SRA), chapter 9.94A RCW.
¶ 26 At the time of Donaghe's offense, the SRA's tolling provision stated that "[a]ny period of supervision shall be tolled during any period of time the offender is in confinement for any reason." Former RCW 9.94A.170(3) (1988). The majority says that Donaghe's precommitment detention at the special commitment center was "confinement for any reason" that tolled his term of community placement.
¶ 27 The term "confinement for any reason" must be read in the context of the criminal scheme in which it appears. The tolling statute and the definition of "confinement" are contained in chapter 9.94A RCW and apply to provisions of the SRA, not an unrelated civil commitment scheme. There is no indication the legislature intended even its most broadly worded definitions under the SRA to sweep outside the criminal context. If we were to extend these SRA concepts beyond the criminal sphere, then why stop at the sexually violent predator statute, chapter 71.09 RCW? Why not encompass any mental health detention? Why not include voluntary inpatient treatment at a clinic that contracts with the State? The majority's statutory analysis offers no principled basis to distinguish between offenders like Donaghe and any other civilly confined individual.
¶ 28 Because Donaghe served out his term of community placement upon completion of his sentence, notwithstanding his precommitment civil detention, I would grant his motion for a certificate of discharge.[1]
¶ 29 I respectfully dissent.
WE CONCUR: GERRY L. ALEXANDER, Justice, RICHARD B. SANDERS, Justice Pro Tem., and BARBARA A. MADSEN, Chief Justice.
NOTES
[1] North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).
[2] The State incorrectly asserts that the terms "community placement" and "community custody" may be used interchangeably. Former RCW 9.94A.030 (1989) provides different definitions for "`[c]ommunity placement'" and "`[c]ommunity custody.'" According to the judgment and sentence filed October 30, 1991, Donaghe was sentenced to community placement.
[3] At times in their briefs, the parties suggest that May 10, 1995 was the date that Donaghe completed the term of his confinement and was transferred to the SCC. The Court of Appeals in the unpublished 2005 decision also found this to be the date of transfer. In re Det. of Donaghe, noted at 128 Wash.App. 1062, 2005 WL 1845669, at * 1. Our record does not include any official prisoner transfer documentation confirming this date. Interestingly, Donaghe asserted at a 2007 hearing on his motion for a certificate of discharge that he was released to "Tacoma prerelease" for seven hours but returned to Shelton for two months before the Department of Corrections sent him to Monroe. Verbatim Report of Proceedings (Nov. 19, 2007) at 6-7. The issue of his alleged prerelease has not been raised on appeal.
[4] Donaghe also sought discharge for a conviction for solicitation to commit assault, for which he received a 13 month sentence that ran concurrently with the rape sentences. The State did not object to discharge of the solicitation conviction.
[5] Former RCW 9.94A.170 was recodified as former RCW 9.94A.625 (2001) and has since been recodified as RCW 9.94A.171. Except where explicitly stated otherwise, this opinion will continue to refer to former RCW 9.94A.170, and all other SRA provisions in effect at the time of Donaghe's offense. See RCW 9.94A.345.
[6] The record sheds no light on the discrepancy between the release date stated in the DOC letter and the May 10, 1995 release date the State referenced in its memorandum opposing Donaghe's discharge. However, neither party raises an issue of fact in regard to this discrepancy. Therefore, this court relies on the parties and findings of the lower courts and finds that the release from incarceration occurred on May 10, 1995, at which time Donaghe was immediately transferred to the SCC.
[7] Donaghe cited the recodified version of this statute in effect at the time of the hearing, RCW 9.94A.637(1). CP at 38-40. For the sake of consistency, this opinion will continue to refer to the statute in effect at the time of Donaghe's offense, former RCW 9.94A.220.
[8] The Court of Appeals did not reach the issue of whether an SVP civil commitment tolls the running of a community placement sentence under former RCW 9.94A.170(3). Donaghe, 152 Wash. App. at 111 n. 22, 215 P.3d 232.
[9] The Court of Appeals dissent found that Donaghe's disenfranchisement was "patently unfair and unlawful"; that the "sole reason" for the continuing disenfranchisement was Donaghe's SCC commitment; that disenfranchisement was punitive and potentially of indefinite duration; that Donaghe should be entitled to his right to vote under RCW 29A.08.520; and that Donaghe was not under DOC authority while confined at the SCC, therefore, at least as of the 2009 amendments to RCW 29A.08.520, Donaghe should be entitled to vote. Donaghe, 152 Wash. App. at 113-15, 215 P.3d 232 (Armstrong, J., dissenting).
[10] Termination of supervision does not necessarily equal notification that the sentence is complete. Although the current version of the discharge statute, RCW 9.94A.637(1), is not applicable to this case, it illustrates how DOC supervision may be terminated while the requirements of the sentence have yet to be completed:

(c) When an offender who is subject to requirements of the sentence in addition to the payment of legal financial obligations either is not subject to supervision by the department or does not complete the requirements while under supervision of the department, it is the offender's responsibility to provide the court with verification of the completion of the sentence conditions other than the payment of legal financial obligations. When the offender satisfies all legal financial obligations under the sentence, the county clerk shall notify the sentencing court that the legal financial obligations have been satisfied. When the court has received both notification from the clerk and adequate verification from the offender that the sentence requirements have been completed, the court shall discharge the offender and provide the offender with a certificate of discharge by issuing the certificate to the offender in person or by mailing the certificate to the offender's last known address.
(Emphasis added.) This provision provides the process an offender must complete to receive discharge when DOC has terminated supervision before the offender completes the sentence requirements. This is precisely the situation presented by the facts of this case.
[11] The Court of Appeals declined to address the issue of whether Donaghe's presentation of the DOC letter satisfies the requirements of RCW 9.94A.637(1)(c):

Donaghe also argues, without citation, that the DOC letter meets the requirements for discharge under RCW 9.94A.637(1)(c) and that RCW 9.94A.637(1)(c) is remedial. Reply Br. of Appellant at 13-14. RAP 10.3(a)(6) requires citation to legal authorities. We do not review issues inadequately briefed or mentioned in passing. State v. Thomas, 150 Wash.2d 821, 868-69, 83 P.3d 970 (2004) (citing State v. Johnson, 119 Wash.2d 167, 171, 829 P.2d 1082 (1992)).
Donaghe, 152 Wash.App. at 111 n. 23, 215 P.3d 232. In his supplemental brief to the court, Donaghe mentions in a footnote that the Court of Appeals declined to reach whether presentation of the DOC letter satisfies RCW 9.94A.637(1)(c); however, he does not take the opportunity to brief the issue more thoroughly. Suppl. Br. of Pet'r. at 10 n. 8. Because of the failure to adequately brief this issue, we decline to address this issue as well. Moreover, even if the issue were reached, it is not likely to change our analysis because the DOC letter does not establish that Donaghe completed the requirements of his sentence, nor could it under former RCW 9.94A.170.
[12] Former RCW 9.94A.207(1) governs the secretary's authority to issue a warrant for the arrest and confinement of any "offender who violates a condition of community placement or community custody." This exception to the community custody tolling statute is not implicated in this case because Donaghe was not confined pursuant to a violation of the conditions of his community custody.
[13] Former RCW 9.94A.195 authorizes a community corrections officer to conduct a warrantless search or arrest of any offender if the officer reasonably believes the offender has violated a condition of his or her sentence. This exception to the community custody tolling statute is not implicated in this case because Donaghe was not confined pursuant to a violation of the conditions of his community custody.
[14] "Partial confinement'" is defined as

confinement for no more than one year in a facility or institution operated or utilized under contract by the state or any other unit of government, or, if home detention has been ordered by the court, in the residence of either the defendant or a member of the defendant's immediate family, for a substantial portion of each day with the balance of the day spent in the community. Partial confinement includes work release and home detention.
Former RCW 9.94A.030(20).
[15] Although not reached in this case, we note that our holding does not necessarily preclude the possibility of Donaghe receiving provisional voting rights if he can meet the requirements of RCW 29A.08.520.
[1] Because I would grant Donaghe's certificate of discharge, it is unnecessary to consider the State's argument that Donaghe's specific request for restoration of his voting rights is moot in light of the 2009 amendments to RCW 29A.08.520. I agree with Judge Armstrong's dissent below that Donaghe should be entitled to vote at least as of the effective date of these amendments. The majority does not foreclose this possibility. Majority at 1178 n. 15.