IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| VALENTE SOLUTIONS, LLC, | No. 87280-0-I |
| Appellant, | |
| v. | DIVISION ONE |
| STATE OF WASHINGTON, DEPARTMENT OF REVENUE, | UNPUBLISHED OPINION |
| Respondent. | |

CHUNG, J. — Valente Solutions, LLC is a consulting firm located in Washington State that provides information technology services. Valente requested a refund of business and occupation (B&O) taxes from the Department of Revenue (Department). The Department apportioned payment for localization services Valente performed for its client Microsoft from 2011-2015 as taxable income because it concluded Valente's customers received the benefit of the services in Washington. The Board of Tax Appeals (the Board) affirmed the Department in part as to most of the localization services at issue. However, it remanded to allow Valente a refund as to other services if it could produce evidence to support its claims. In this appeal, Valente challenges the Board's decision to the extent it determined certain localization services were taxable in Washington. We affirm.

FACTS

Valente is a Washington limited liability company with its main office in Bellevue, Washington. From January 1, 2011, through March 31, 2015 (Period at Issue), Valente also had a satellite office in California. Valente provided a variety of information technology services for customers located throughout the United States and in foreign countries. These services included "translating client websites into foreign languages, creating and updating customer-facing websites, providing support for product launches in foreign markets, merchandising support, and website management."

For the Period at Issue, over 85 percent of Valente's gross income came from services provided to its primary client, Microsoft, which is headquartered in Redmond, Washington. Valente and Microsoft entered into a master contract governing their business relationship, but they initiated specific assignments through statements of work (SOWs).[1]

Between January 2011 and March 2015, Valente paid $454,890 in B&O tax to Washington. In September 2015, Valente filed a refund claim with the Department, explaining that for the Period at Issue, the Department had failed to properly apportion its gross income. Valente asserted it was due a refund of $403,776 based on the reasonable proportional method of attributing its receipts under WAC 458-20-19402 (Rule 19402), the Department's administrative rule that implements the state's single factor sales apportionment statute, RCW 82.04.462. Valente utilized internet usage data to "apportion revenue amongst the states."

---

[1] The master contract between Microsoft and Valente was not offered at the Board of Tax Appeals proceedings and, therefore, is not in the record.

2

The Department's Audit Division (Audit Division) reviewed Valente's refund claim. The Audit Division requested documentation to verify the claim, including all SOWs for the refund period. Based on the records reviewed, the Audit Division concluded Valente's predominant activity was related to providing support services but that a number of the SOWs pertained to localization services for Microsoft.[2] For the localization services, the auditors determined the benefit of the service was rendered to a specific project "team" recognized in the SOWs, the Microsoft team in Washington. Thus, the Department determined that under the relevant statute, that income was attributable to Washington and was taxable, so it denied a majority of Valente's refund request.[3]

Valente sought review by the Department's Administrative Review and Hearings Division (ARHD). The ARHD sustained the assessment and denied Valente's subsequent petition for reconsideration. Valente then timely appealed to the Board and argued that the refund claim "applied a reasonable method of proportional attribution" and that the Department "improperly denied the refund by attributing income according to where Valente performed its services instead of to the market for Valente's customers' products, which is where Valente's customers receive the benefit of Valente's services." Valente requested a refund of $307,500 "in service and other (service) B&O tax, plus interest."

---

[2] As described by Valente, the term "localization" is the process of adapting a product or media to meet the needs of a particular language, culture, country, or target population.

[3] The Department did approve a refund in the amount of $96,275. However, the Department also assessed $10,362 in unpaid use tax, resulting in an offset against the B&O tax refund. The assessed use tax is not at issue in this appeal.

In May 2022, Valente filed an amended notice of appeal requesting a refund of $335,527.[4] When the Department sought clarification regarding how Valente computed the revised refund amount, Valente responded that its "customers received 100 percent of the benefit of Valente's services in international jurisdictions such that no gross income should be attributed to Washington."

After a one-day hearing on April 13, 2023, the Board issued its "Final Decision" on October 27, 2023. The Board found "that no evidence was introduced to show that [Valente] had [a] nexus in any state or country other than Washington and California." Indeed, the Board found "no specific evidence or testimony attributed the localization work to a 'primary' or 'single' country" as it related to the proffered SOWs:

> [T]he evidence, including the testimony of [Valente's founder and President] does not establish that Microsoft received the benefit of Valente's localization service in a specific state, or primarily in a specific state. While a foreign country is a "state" for purpose of the apportionment statute, [Valente] still has the burden of establishing which foreign country received the benefit of its localization service with respect to each Microsoft SOW.

Additionally, the Board concluded that "the Department's analysis of the throw-out rule[5] [was] correct under the law." The Board disagreed with Valente's argument that "proportionate attribution is not required because the localization revenue is attributable 100 percent to the country in which the benefit was received and that the

---

[4] At the Board hearing, Valente requested a refund of $293,610. Later, in its proposed findings of fact and conclusions of law, Valente revised its refund calculation to $253,728. While the precise amounts of the requested refund varied, at the Board hearing, Valente stated it was challenging solely the localization amounts that were apportioned to Washington.

[5] The "throw-out rule" relates to the denominator of the receipts factor, which is a fraction that applies to apportionable income for each calendar year. WAC 458-20-19402(401). Throw-out income "includes all apportionable receipts attributed to states where the taxpayer . . . is not taxable . . . and . . . at least part of the activity of the taxpayer . . . is performed in Washington." WAC 458-20-19402(403).

decision in AT&T[6] is thus not relevant." Rather, regarding two SOWs that assigned work to multiple countries, the Board concluded that "AT&T made clear that, at that time, the law required that work be assigned to a single state or location for apportionment purposes."

Thus, the Board affirmed the Department's determination in part. It concluded that Valente was "entitled to a refund of tax asserted on net amounts labeled as General Journal Entry (GJE) and that Valente "may be entitled to a refund for taxes paid on amounts designated as 'Microsoft localization' . . . for the period of June 12, 2014, [following the AT&T decision] through the end of the audit period." Accordingly, the Board remanded to the Department to allow Valente to present evidence "to support its attributional claims for periods after June 12, 2014, through the end of the audit period, for adjustment."

Valente sought judicial review in superior court on November 27, 2023. On August 12, 2024, the superior court certified transfer of this case to this court for direct review.

## DISCUSSION

Valente argues that the "undisputed evidence presented to the Board established that Valente's customer received the benefit of Valente's country-specific website localization services in each particular foreign country where the localized website was located." Accordingly, Valente challenges the Board's conclusion as "erroneous as a

---

[6] As discussed further below, in AT&T Services, Inc. v. Department of Revenue, the court held that Rule 19402, which permitted "a reasonable method of proportionally attributing receipts," did not apply before June 12, 2014, the effective date of related amendments to RCW 82.04.462(3)(b)(i) and (ii), because it exceeded the Department's statutory authority. No. 19-2-06196-34, 2021 WL 9879333 at *3-*4 (Thurston County Super. Ct., Wash. May 24, 2021). This superior court order is not precedential, but we cite it to explain the parties' arguments in this case.

matter of law, not supported by substantial evidence, and arbitrary and capricious" and seeks a refund of $253,728. The Department counters that Valente failed to meet its burden to show the Department incorrectly "determined where Microsoft received the benefit of Valente's localization service[s]" given the information included in the SOWs and the testimony at the Board hearing. We agree with the Department.

This court reviews decisions of the Board under the Administrative Procedure Act (APA), ch. 34.05 RCW. Echo Glob. Logistics, Inc. v. Dep't of Revenue, 22 Wn. App. 2d 942, 945, 514 P.3d 704 (2022). Under the APA, this court may reverse the Board's decision only on certain enumerated grounds, including that the agency erroneously interpreted or applied the law, the agency's order is not supported by substantial evidence, or the order is arbitrary and capricious. RCW 34.05.570(3)(d), (e), and (i).

"The burden of demonstrating the invalidity of agency action is on the party asserting invalidity." RCW 34.05.570(1)(a). This burden includes showing that the "tax paid was incorrect and prov[ing] the correct amount owed." Dynamic Res. Inc., v. Dep't of Revenue, 21 Wn. App. 2d 814, 819, 508 P.3d 680 (2022).

We review alleged errors of law de novo. Dep't of Revenue v. Nord Nw. Corp., 164 Wn. App. 215, 223, 264 P.3d 259 (2011). We review the Board's findings of fact for substantial evidence, which is "a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order." Bowers v. Pollution Control Hr'gs Bd., 103 Wn. App. 587, 596, 13 P.3d 1076 (2000). Here, Valente does not assign error to any of the Board's findings of fact, so they are verities on appeal. Stuewe v. Dep't of Revenue, 98 Wn. App. 947, 950, 991 P.2d 634 (2000) ("Unchallenged findings of fact are verities on appeal.").

6

I. Legal Principles – Benefit of Services and Apportionment

"A state cannot tax value earned outside its borders." LendingTree, LLC v. Dep't of Revenue, 12 Wn. App. 2d 887, 890, 460 P.3d 640 (2020). "However, 'by applying the principles of apportionment, states may tax that part of an interstate transaction which takes place within the state.' " Id. (quoting Smith v. State, 64 Wn.2d 323, 334, 391 P.2d 718 (1964)). This concept of apportionment applies to Washington's gross receipts tax, known as the B&O tax, "for the act or privilege of engaging in business activities." RCW 82.04.220(1). "Any person earning income taxable in Washington and in another state must apportion to Washington the income derived from business activities performed within this state." LendingTree, LLC, 12 Wn. App. 2d at 891 (citing RCW 82.04.460(1)).

"In 2010, the Washington Legislature adopted a 'single factor' receipts apportionment scheme for service income." Id. See LAWS of 2010, 1st Spec. Sess., ch. 23. The "scheme" or method in the apportionment statute is based on a formula, the numerator of which is the taxpayer's apportionable income attributable to Washington and the denominator of which is the taxpayer's apportionable income everywhere. RCW 82.04.462(2), (3)(a). " 'Apportionable income' means gross income of the business generated from engaging in [apportionable] activities[7] falling within the 'services' classification under the B&O tax classification." ARUP Laboratories, Inc. v. Dep't of Revenue, 12 Wn. App. 2d 269, 282, 457 P.3d 492 (2020) (quoting RCW 82.04.460(4)(a); RCW 82.04.290). This appeal pertains only to service income.

---

[7] RCW 82.04.460(4)(a)(i)-(x) defines "apportionable activities" as activities that are taxed under ch. 82.04 RCW. See generally WAC 458-20-19401(2)(a) (listing "apportionable activities" subject to B&O tax, including "services").

The statute provides a series of inquiries to determine what income is attributed to Washington. As originally enacted, the statute explained this process as follows:

> (3)(a) The numerator of the receipts factor is the total gross income of the business of the taxpayer attributable to this state during the tax year from engaging in an apportionable activity. The denominator of the receipts factor is the total gross income of the business of the taxpayer from engaging in apportionable activity everywhere in the world during the tax year.
>
> (b) Except as otherwise provided in this section, for purposes of computing the receipts factor, gross income of the business generated from each apportionable activity is attributable to the state:
>
> (i) Where the customer received the benefit of the taxpayer's service . . . .
>
> (ii) If the customer received the benefit of the service . . . in more than one state, gross income of the business must be attributed to the state in which the benefit of the service was primarily received . . . .
>
> (iii) If the taxpayer is unable to attribute gross income of the business under the provisions of (b)(i) or (ii) of this subsection (3), gross income of the business must be attributed to the state from which the customer ordered the service . . . .

Former RCW 82.04.462 (2010). The term "state" is defined as "a state of the United States, the District of Columbia, the Commonwealth of Puerto Rico, any territory or possession of the United States, or any foreign country or political subdivision of a foreign country." RCW 82.04.462(5)(b).

While the statute does not define "benefit" of a service, " '[a]n undefined term is given its plain and ordinary meaning unless a contrary legislative intent is indicated.' " ARUP, 12 Wn. App. 2d at 282 (quoting State v. Donaghe, 172 Wn.2d 253, 262, 256 P.3d 1171 (2011)) (internal quotation marks omitted). For the plain meaning of "benefit," the ARUP court referred to the dictionary definition: " 'The advantage or privilege something gives; the helpful or useful effect something has.' " 12 Wn. App. 2d at 282

8

(quoting BLACK'S LAW DICTIONARY 193 (11th ed. 2019)). Therefore, the state to which the income should be apportioned is the location where "customers receive the helpful or useful effect" of a taxpayer's services. Id. "Customer is defined as the 'person or entity to whom the taxpayer makes a sale or renders services or from whom the taxpayer otherwise receives gross income of the business." Id. at 280 (quoting RCW 82.04.462(3)(b)(viii)).

In 2012, the Department adopted Rule 19402, which elaborates on the single factor receipts apportionment method and provides a " 'framework for determining where the benefit of a service is received.' " ARUP, 12 Wn. App. 2d at 280 (quoting WAC 458-20-19402(303)). This rule uses the concept of reasonable proportional attribution to simplify the calculation of attributing gross income to the numerator of the apportionment formula. Former WAC 458-20-19402 (2012). Under this rule, taxpayers are permitted to use a "reasonable method of proportionally attributing" their gross income, meaning "a method of determining where the benefit of an activity is received and where the receipts are attributed that is uniform, consistent, and accurately reflects the market, and does not distort the taxpayer's market." Former WAC 458-20-19402(106)(f) (2012). Accordingly, this portion of the rule permits taxpayers to proportionally attribute the benefit of its services across many states instead of defaulting to where their customers received most of the benefit of their services. Id.

After the Department issued Rule 19402, in 2014, the legislature amended the apportionment statute to authorize reasonable proportional attribution by adding the following language to RCW 82.04.462(3)(b)(i):

> When a customer receives the benefit of a taxpayer's services . . . in this and one or more other states and the amount of gross income of the

business that was received by the taxpayer in return for the services received . . . can be reasonably determined by the taxpayer, such amount of gross income must be attributed to this state.

LAWS OF 2014, ch. 97, § 305. However, the amendment was not expressly retroactive.

In May 2021, in AT&T Services, Inc. v. Department of Revenue,[8] the Thurston County Superior Court addressed whether the reasonable proportional attribution method, as set out in Rule 19402, could be applied prior to the effective date of the amended statute. The court reasoned that former RCW 82.04.462(3)(b) (2010) unambiguously required that "taxpayers attribute their gross income to a single state or location for apportionment purposes."[9] Therefore, the Department lacked authority to amend or change the statute to proportionally attribute income among more than one state, so taxpayers could use the reasonable proportional attribution method set out in Rule 19402 only *after* the effective date of the amended statute.

## II.  Calculation of Numerator

Here, while originally, Valente attempted to use the reasonable apportionment method pursuant to the former Rule 19402, its position in this appeal, after the AT&T decision, is that it is immaterial whether it was permitted to use this method. Instead, Valente argues that the location where its customers received the benefit of its services was entirely outside of Washington. Specifically, it contends Microsoft "received the benefit of Valente's services in each country where each country-specific website marketed Microsoft products."

---

[8] AT&T Servs., Inc. v. Dep't of Revenue, No. 19-2-06196-34, 2021 WL 9879333 at *3-4 (Thurston County Super. Ct., Wash. May 24, 2021).
[9] AT&T, No. 19-2-06196-34, 2021 WL 9879333 at *3.

To support its calculation of the numerator, Valente cites to portions of testimony by its founder and President, Patricia Wertheimer, emphasizing generally that "Microsoft used Valente's localized websites to market and sell products to local consumers *in* the specific country where each website was located." Valente contends that because the evidence presented at the hearing showed that none of the challenged localization work is attributable to Washington, it does not need to be included in the numerator. Thus, the numerator should be zero. The Department counters that Valente's evidence "was insufficient to meet either the first or second cascading steps in RCW 82.04.462(3)(b)," and so "localization service income would be attributed under the next applicable cascading step," where the customer ordered the benefit.

When reviewing Valente's refund claim, the Audit Division identified and categorized the disputed receipts according to the information available within the SOWs. Wertheimer testified that during the Period at Issue, Valente focused on localization services, which involved adapting a product, content, or messaging to meet the requirements of a specific locale. Additionally, she confirmed that while Valente contracted with Microsoft in Redmond, Washington, the SOWs were "managed by the local subsidiaries and the websites for which the work was done were all located in the subsidiaries' countries."

Wertheimer's testimony discussed only three of the SOWs specifically. She testified that the SOW in Exhibit 80 "was work for multiple 'Tier 1' European countries, including France, Germany, United Kingdom, Portugal, Ireland, Spain, and Italy." She testified that the SOW in Exhibit A31 was for work in France and that the SOW in Exhibit 81 was work for "Tier I European countries."

The Department introduced testimony from Lizeth Mogollan, a Revenue Auditor with the Department. Mogollan confirmed that Valente had submitted 83 SOWs relevant to the refund period and that the Audit Division "did not accept . . . [Valente's] attribution of income, but instead made its own determination of attribution based on the language of the SOWs." Mogollan stated that the determinations were based on the entirety of the documents, particularly the description of the duties and deliverables and on where the Audit Division determined that the customers received the benefit of the service. Thus, after reviewing the SOWs, the Audit Division determined that Valente's services fell into several categories, including "Advertising and Localization."[10] The Audit Division found that most of the SOWs related to localization work for Microsoft failed to "ma[k]e a reference to team location," and therefore relied on an unchanged "attribution method." At the hearing, Mogollan confirmed that when there is insufficient information to determine where the benefit of a service was attributed, auditors will proceed through the series of inquiries, or "cascading steps," under RCW 82.04.462(3)(b).

Mogollan also testified that some of the Audit Division's determinations regarding the location where Microsoft received the benefit of Valente's services were predicated on a distinction between localization as it relates to product development versus marketing. Mogollan testified to a Department-created "audit white paper"[11] that explains that localization is typically related to two business activities, product development and marketing, and that "localization services related to product

---

[10] The scope of Valente's refund request before the Board was limited to obtaining a refund of $253,728, based on income from localization services performed for Microsoft.

[11] The audit white paper describes its purpose as "to clarify [the Department's] position regarding the appropriate methodology to attribute receipts in several categories of activities that [the Department] ha[s] commonly seen."

development should be attributed to the location where the client's product development activity occurs," while "localization services related to creating a marketing strategy/product for a specific target market should be attributed to the location of the target market."

For example, at the Board hearing, Mogollan was asked to review one particular SOW and characterize the service activity. Mogollan confirmed that the SOW did relate to localization work but determined that the specific work Valente described related more to "product development and team support, team management." Furthermore, she determined that none of the language in the SOW was specific to marketing a final project and concluded that the benefit of the service was received in Washington because Microsoft's related business activity was for the development of content for its product launches. Therefore, for some of the SOWs, the Audit Division did not merely default to Washington because it could not determine where the benefit was received; to the contrary, it affirmatively categorized the SOWs as "product development" work, which was Washington-related work.

On redirect, Wertheimer testified that the localization work Valente performed was exclusively for global releases and that their resources are used to market Microsoft's products to a global audience. She added that Valente has a representative or agent physically present in each country for which Valente has performed localization services during the Period at Issue, but "the nature of the presence was not specified." She emphasized that Valente is not a development company, but rather a marketing company that is hired once a company is "ready to go global." Valente argues that "Valente and Microsoft determined the location where Microsoft received the benefit of

Valente's localization services using a website ['Uniform Resource Locators'] URL specific to each country" and that each localized website had its "own specific tag and language." These URLs, Valente contends, would allow the Department to determine where Microsoft received the benefit of Valente's localization services.[12]

Valente additionally highlights that the Board "recognized such undisputed evidence [concerning where the benefit of its services was received] in several findings and conclusions," and specifically relies on the Board's finding that "Wertheimer testified that . . . [Valente] focused on localization service . . . [that] appealed to the target market, that is, customers in the country." Valente also focused on the Board's conclusion that "[Valente] provided sworn testimony that the SOWs identified as 'localization' by its original accountants were all done for the benefit of Microsoft subsidiaries in other countries."

However, Wertheimer provided specific testimony regarding only three of the SOWs that related to localization work, and only one of those SOWs showed work done particularly in France. Otherwise, the Board found that no specific evidence or testimony rebutted the Department's determinations that relevant SOWs either predominantly reflected product development-related localization work or generally failed to specify where work was completed, as required pursuant to RCW 82.04.462(3)(b)(i) or (ii). Thus, Valente failed to meet its burden set out in step one and two. Specifically, Valente failed to show where Microsoft received the benefit of its services under RCW

---

[12] On appeal, Valente cites only Wertheimer's testimony as to these records and does not rely on the SOWs themselves. While Wertheimer discussed this cataloging system, Valente did not provide these records to the Department or the Board. Thus, any additional information that could aid in determining where the work was completed within the relevant SOWs is not a part of the record before either the Board or this court.

82.04.462(3)(b)(i), or, if Microsoft received the benefit of its services in more than one state, where Microsoft *primarily*[13] received the benefit of Valente's services under RCW 82.04.462(3)(b)(ii). Without a successful showing under steps one and two, the Department's review moves to the third step, RCW 82.04.462(3)(b)(iii), which requires that income must be attributed to the state from which Microsoft ordered the service. The SOWs did contain that information, and nearly consistently show that Microsoft ordered the service from a Washington location.[14] Similarly, for the period from June 12, 2014, forward, when RCW 82.04.462(3)(b)(i) allowed proportionate attribution of Valente's work to multiple states, Valente did not provide specific evidence to show which of the disputed transactions took place. Thus, Valente did not prove an overpayment of the B&O tax based on the numerator of the receipts factor.

### III. Calculation of Denominator

Additionally, Valente argues that the Board erred by rejecting its calculation of the denominator of the receipts factor because it had no throw-out income. We reject this argument, as Valente failed to prove it was taxable in other states besides Washington and California during the Period at Issue.

Determining the denominator of the receipts factor requires specificity regarding income apportionable to Washington and other states. The denominator of the single factor sales apportionment formula is the taxpayer's "total (worldwide, including Washington) apportionable receipts from engaging in the apportionable activity during

---

[13] "Primarily" in this context means more than fifty percent. WAC 458-20-19402(301)(b).

[14] There is at least one SOW that lacked an address. However, the audit worksheet shows that it was apportioned according to internet usage data in Washington and thus attributed only 2.48 percent to Washington.

the calendar year" minus its "throw-out" income. WAC 458-20-19402(402)(b).[15] "Throw-out income includes all apportionable receipts attributed to states where the taxpayer: (a) is not taxable . . . and (b) at least part of the activity of the taxpayer related to the throw-out income is performed in Washington." WAC 458-20-19402(403)(a), (b).[16] In other words, calculating throw-out income requires attributing service income to a specific state. If the amount is not taxable in another state and at least part of the activity is performed in Washington, those amounts are excluded from the denominator as throw-out income.

To be considered "taxable in another state," the taxpayer must either be "subject to a business activities tax by another state" or "the taxpayer [must] meet[] the substantial nexus thresholds." WAC 458-20-19402(106)(h)(i)(A),(B); see also RCW 82.04.462(3)(c). From 2011 to 2015, the Period at Issue, a taxpayer "engaging in business is deemed to have [a] substantial nexus with this state" if the taxpayer was an individual and resident or domiciliary of this state, a business entity and is organized or commercially domiciled in this state, or a nonresident individual or business entity that is organized or commercially domiciled outside of this state and met one of the four

---

[15] As the substance of the portions of Rule 19402 that address the throw-out income issue in this case has not changed, we cite to the current version of the WAC.

[16] For example, the Rule 19402 includes this example of how to calculate throw-out income:

> During 2019, XYZ Corp. performs all services in Washington and has apportionable receipts attributed using the criteria listed in subsections (301) through (305) of this rule or WAC 458-20-19403 as follows: Washington $500,000; Idaho $50,000; Oregon $100,000; and California $300,000. XYZ is subject to Oregon and Idaho corporate income tax, but does not owe any California business activities taxes. XYZ does not have any throw-out income because Oregon and Idaho impose a business activities tax on its activities and it is deemed to be taxable in California because it satisfies the minimum nexus standards for 2019 explained in WAC 458-20-19401. XYZ's receipts factor is: 500,000/950,000 or 52.63%.

WAC 458-20-19402(403) (example 48).

statutory nexus thresholds under former RCW 82.04.067(1)(c) (2010). These four thresholds were having "(i) more than fifty thousand dollars of property in this state; (ii) more than fifty thousand dollars of payroll in this state; (iii) more than two hundred and fifty thousand dollars of receipts from this state; or (iv) at least twenty-five percent of the person's total property, total payroll, or total receipts in this state." Former RCW 82.04.067(c) (2010).

Valente argues that the Board "erred in dismissing [its] refund claim on the ground that it is necessary to calculate 'throw-out income.' " Specifically, Valente contends that it has no throw-out income because it is taxable in other states—i.e., it has a substantial nexus with other states. In support, Valente cites the undisputed testimony that it maintains "physical presence through agents or representatives in each jurisdiction to which it attributed income."[17] However, outside of Wertheimer's general testimony that Valente maintained a physical presence in each state in which it worked, the record lacks any evidence of the above-mentioned thresholds or proof that it was subject to a business activities tax in another state. Under the statute applicable to the Period at Issue, Valente could not prove it was taxable in another state and, as a result, Valente *did* need to calculate its throw-out income.[18] Thus, the Board did not err when it

---

[17] Valente's reply brief cites to Lamtec Corp. v. Department of Revenue, 170 Wn.2d 838, 246 P.3d 788 (2011), to support the contention that "Washington courts have long established that a taxpayer has substantial nexus, and therefore is 'taxable' in a state if the taxpayer has physical presence there." In Lamtec, the Washington Supreme Court was asked to determine what requirements must be met under the commerce clause before Washington could levy its B&O tax onto an out-of-state business. Id. at 840-41. The court held the out-of-state business was subject to the B&O tax because it had a substantial nexus with the state. Id. at 851. It reasoned that despite not having a permanent presence within the state, the business created a substantial nexus when it regularly sent sales representatives into Washington to maintain its market. Id.

[18] Later amendments to RCW 82.04.067 outside of the Period at Issue did establish that a business entity organized outside of the foreign state, subject to limitations in RCW 82.32.531, could prove a substantial nexus with a state through "physical presence . . . which need only be demonstrably more than a slightest presence." RCW 82.04.067(1)(c)(ii).

concluded that "no evidence was introduced to show that [Valente] had nexus in any state or country other than Washington or California," and that for this additional reason, Valente failed to prove an overpayment of its B&O tax.

####    IV.  Board Remand

The Department argues that "[t]he Board did make one error in its Final Decision, but that error is harmless." Specifically, the Department challenges the Board's remand of the case to the Department to review additional records from Valente that support a "refund for taxes paid on amounts designated as 'Microsoft localization' in [the Department's audit workpapers] for the period June 12, 2014, through the end of the audit period."

The Department did not raise this issue in a cross-appeal, so it is not properly before us. Accordingly, we decline to consider the issue.

####    CONCLUSION

We affirm the Board's Final Decision.

_Chung, J._

WE CONCUR:

_Birk, J._